**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI**

SARAH P.,

        **Plaintiff,**

    v.

                                     **Civil Action 1:25-cv-00950**
                                     **Judge Michael R. Barrett**
                                   **Magistrate Judge Kimberly A. Jolson**

COMMISSIONER OF
SOCIAL SECURITY,

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Sarah P., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI").  For the following reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.    BACKGROUND

On September 8, 2022, Plaintiff protectively filed an application for SSI, alleging that she was disabled beginning September 1, 2005, due to degenerative disc disease (DDD), arthritis in the spine, epilepsy, grand mal and petit mal seizures, depression, anxiety, osteoarthritis in the hip, sleep issues, chronic pain, dyslexic, and fingers cut off and reattached.  (R. at 199–205).  After her application was denied initially and on reconsideration, Administrative Law Judge Thuy–Anh Nguyen ("ALJ") held a hearing on February 6, 2024.  (R. at 38–63).  Ultimately, the ALJ denied benefits in a written decision on April 24, 2024.  (R. at 18–37).  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. at 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on December 19, 2025 (Doc. 1), and the Commissioner filed the administrative record on February 19, 2026 (Doc. 7).  The matter has been briefed and is ripe for consideration.  (Docs. 8, 9, 10).

### A.    The Administrative Record

In her opinion, the ALJ summarized Plaintiff's statements to the agency, hearing testimony, Plaintiff's medical records and symptoms, the medical source opinions, and prior administrative medical findings.  (R. at 24–31).  Rather than repeat these summaries, the Court will focus the evidence pertinent to Plaintiff's assigned errors below.

### B.    The ALJ's Decision

The ALJ found that Plaintiff has not engaged in substantial gainful activity since September 8, 2022, the application date.  (R. at 24).  The ALJ determined that Plaintiff suffered from the following severe impairments: disorders of the spine, chronic pain syndrome, status post sacroiliac (SI) joint fusion, and epilepsy.  (*Id.*).  The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, meet or medically equals a listed impairment.  (R. at 26).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> After careful consideration of the entire record, the [ALJ] finds that [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except she is further limited to standing and/or walking 2 hours in an 8–hour workday; sitting for 6 hours in an 8–hour workday; frequently balancing, stooping, kneeling, crouching, or climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; occasionally crawling; avoiding concentrated exposure to wetness and extreme cold; avoiding all exposure to unprotected heights, commercial driving, or hazardous machinery; and occasionally operating foot pedals with the right lower extremity.

(R. at 27).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 28).

Relying on the vocational expert's testimony, the ALJ concluded that Plaintiff is capable of performing her past relevant work as a babysitter. She concluded that this work does not require the performance of work–related activities precluded by Plaintiff's RFC. (R. at 30). The ALJ made an alternate Step 5 finding, based on Plaintiff's age, education, work experience, and RFC, that she could perform sedentary exertional, unskilled jobs that exist in significant numbers in the national economy, such as a food and beverage order clerk, telephone solicitor, or charge account clerk. (R. at 30–32). She therefore concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since September 8, 2022, the date the application was filed. (R. at 32).

## II.    STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60

(6th Cir. 1983)).

### III.    DISCUSSION

Plaintiff raises three errors:  (1) the ALJ's finding that Plaintiff is capable of balancing "frequently" is internally inconsistent with her other RFC findings; (2) the ALJ failed to articulate the persuasiveness of the supportability factor in evaluating the prior administrative medical findings of Leon Hughes, M.D. and Stephen Koch, M.D.; and (3) the ALJ impermissibly found that Plaintiff is capable of performing her past relevant work as a babysitter.  (Doc. 8).  After considering each, the Undersigned finds no error in the ALJ's opinion.

#### A.    The ALJ's Balancing "Frequently" Limitation

Plaintiff's first assignment of error asserts that the ALJ's RFC finding is internally inconsistent.  (Doc. 8 at 5).  "[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of his [RFC].'"  *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004).  A plaintiff's RFC "is defined as the most [she] can still do despite the physical and mental limitations resulting from [her] impairments."  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1545(a)(1).

As noted above, the ALJ found that Plaintiff has the residual functional capacity to perform sedentary work.  (R. at 27).  20 C.F.R. § 416.967(a) defines sedentary work as work that "involves sitting" and where "walking and standing are required occasionally."  The ALJ further supplemented Plaintiff's sedentary work classification, including limitations to standing and/or walking 2 hours in an 8-hour workday; sitting for 6 hours in an 8-hour workday; and only "frequent" balancing and crouching.  (*Id.*).  As for the last, the SSA defines "frequent" as "occurring from one-third to two-thirds of the time.  *See* Social Security Ruling 83-10, 1983 WL 31251, at *6.

Plaintiff takes issue with the supposed "internal inconsistency" of the ALJ's finding that Plaintiff can balance frequently—for up to two-thirds of a workday—while at the same time limiting her to standing and walking for only one-quarter of a workday.  (Doc. 8 at 5).  She claims that because balancing implicates "maintaining body equilibrium to prevent falling when walking or standing," it does not make sense for the ALJ to have found her capable of frequent balancing in a job where she primarily sits.  (*Id.* (citing U.S. Department of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, Appendix C (1993)).

Up front, Plaintiff ignores that also contained in the definition of balancing is "[m]aintaining body equilibrium to prevent falling when . . . crouching."  U.S. Department of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, Appendix C (1993).  Because the ALJ limited Plaintiff to frequent crouching, it is not inconsistent for her to also have limited Plaintiff to frequent balancing.  Even more, the Undersigned reads the "frequently balancing" restriction as applying to the two hours of standing and walking—not as subverting it.  *See Imse v. Berryhill*, 2018 WL 948478, at *4 (N.D. Ind. 2018) (finding an RFC limiting a plaintiff to frequent balancing but also standing and walking for only two hours not "irrational on its face").  But even if these propositions were not true, Plaintiff has not sufficiently explained why this alleged error requires remand.

In particular, the ALJ found that Plaintiff could perform her past relevant work as a babysitter, but, in the alternative, the ALJ identified three other jobs she could perform: food and beverage clerk, telephone solicitor, and charge account clerk.  (R. at 30–31).  According to the Dictionary of Occupational Titles (DOT), none of these jobs require balancing.  *See* DOT § 209.567-014, 1991 WL 671794 ("Balancing: Not Present - Activity or condition does not exist");

DOT § 299.367-014, 1991 WL 672631 (same); DOT § 205.367-014, 1991 WL 671715 (same). Therefore, any error is harmless.

### B.    The ALJ's Consideration of the State Agency Reviewers' Opinions

Next, Plaintiff takes issue with the ALJ's supportability analysis of the state agency consultants' opinions.  The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.    20 C.F.R. § 416.913(a)(1)–(5).    Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 416.920c(a).  Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements."  § 416.920c(c)(1)–(5).  Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered.  20 C.F.R. § 416.920c(b)(2).  At base, the role of the ALJ is to articulate how she considered medical opinions and how persuasive she found the medical opinions to be.  *Holston v. Saul*, No. 1:20–CV–1001, 2021 WL 1877173, at *11 (N.D. Ohio Apr. 20, 2021), *report and recommendation adopted*, No. 1:20 CV 1001, 2021 WL 1863256 (N.D. Ohio May 10, 2021).  When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the

6

medical opinion.  20 C.F.R. § 416.920c(c)(1).  When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion.  20 C.F.R. § 416.920c(c)(2). And although an ALJ may discuss how he or she evaluated the other factors, she is not generally required to do so.  *Id.*

For a treating provider, the delineation between supportability and consistency is relatively clear.  A treating provider commonly relies on her own records to support medical opinions.  An ALJ can identify those records and consider whether the records support the opined functional limitations.  The ALJ can also consider how consistent the medical opinion is when compared to other record evidence.  "Because each factor (supportability and consistency) considers different evidence, the reviewing court can easily determine whether the ALJ has addressed each factor." *Russetta W. v. Comm'r of Soc. Sec. Admin.*, No. 2:23-CV-02260, 2024 WL 3982948, at *4 (S.D. Ohio Aug. 29, 2024), *report and recommendation adopted*, No. 2:23-CV-2260, 2024 WL 4266520 (S.D. Ohio Sept. 23, 2024).

But the Undersigned notes the inherent lack of clear delineation between supportability and consistency when an ALJ evaluates the opinion of a reviewer, like a state agency physician, who does not have their own treatment records.  In that case, the reviewer must consider and incorporate evidence in the administrative record to support their opinions.  As a consequence, the ALJ considers substantially the same body of evidence in conducting both the supportability and consistency analysis.  *See, e.g.*, *Stacie B. v. Comm'r of Soc. Sec.*, No. 2:23-CV-1411, 2023 WL 8251252, at *5 (S.D. Ohio Nov. 29, 2023), *report and recommendation adopted*, 2024 WL 20734 (S.D. Ohio Jan. 2, 2024).

Consider, for example, a case in which there has been little or no change to the medical evidence of record between the time the reviewer issues her finding and the ALJ conducts a hearing.  In that instance, the evidence upon which the reviewer supported her finding—the complete medical record at the time of her finding—would be virtually identical to the evidence with which the opinion is consistent or inconsistent—the complete medical record at the time of the ALJ's hearing.  The ALJ is left in a position in which she is unable to consider supportability without simultaneously addressing consistency, and vice versa.  A plaintiff might semantically allege error in such a case, saying that the ALJ only addressed consistency because she compared the reviewer's opinion to the entirety of the record.  But the ALJ would have still fulfilled the purpose of the regulation: to give a fulsome review to medical opinions and prior administrative findings, paying particular attention both to how the opinions are internally supported and explained, and how they compare to the record as a whole.  *See, e.g.*, *id.*; *Vaughn v. Comm'r of Soc. Sec.*, No. 20-cv-1119-TMP, 2021 WL 3056108, at *12 (W.D. Tenn. July 20, 2021) (finding where a physician's opinion was based on a review of the plaintiff's medical history, "the ALJ's discussion of [the plaintiff]'s medical history is, in essence, a discussion of whether the evidence [the physician] reviewed could actually support his conclusions."); *Kenneth B. v. Comm'r of Soc. Sec.*, No. 3:22-CV-00672-CHL, 2024 WL 1199025 (W.D. Ky. Mar. 20, 2024) ("The ALJ properly considered the supportability of the state agency medical consultants' opinions with respect to the other medical evidence of record that they reviewed in reaching their opinions.").  At base, a harmless-error analysis should apply to an ALJ's decision which clearly discusses the consistency of a state agency reviewer's opinion, when that same opinion was formed upon records which encompassed the relevant period of discovery and the ALJ elsewhere discusses those records in detail.  *See, e.g.*, *Stacie B.*, 2023 WL 8251252, at *5; *Vaughn*, 2021 WL 3056108, at *12.

8

Against that backdrop, Plaintiff asserts that the ALJ did not articulate the supportability of the state agency medical consultants' opinions. (Doc. 8 at 8). The ALJ described Dr. Hughes and Dr Koch's opinions as follows:

> In March 2023, Dr. Hughes, a state agency medical consultant, opined that there was insufficient evidence to support a functional determination, as [Plaintiff] was no[t] cooperative (Exhibit B3A). Dr. Koch, also a state agency consultant, reviewed additional evidence and opined that [Plaintiff] retained the physical ability to lift and carry 10 pounds occasionally and 10 pounds frequently; stand and/or walk for about 2 hours in an 8–hour workday; sit for about 6 hours in an 8–hour workday; frequently balance, stoop, kneel, crouch, or climb ramps and stairs; occasionally crawl; never climb ladders, ropes or scaffolds; avoid concentrated exposure to extreme cold and wetness; and avoid all exposure to workplace hazards (Exhibit B5A).

(R. at 30 (citing R at 86–92, 94–103)). The ALJ then found Dr. Koch's opinion persuasive. (*Id.*). She commented that it was "generally supported and consistent with the other medical evidence of record." (*Id.*). Specifically, the ALJ determined:

> [A] sedentary exertional capacity is sufficient to fully accommodate the abnormal spinal imaging, residuals of the SI joint fusion, and her chronic pain syndrome. However, considering the repeated findings of normal range of motion in the spine and only intermittent gait abnormalities, greater exertional, postural, or foot control limitations are not merited. In addition, considering the seizure control with medication, the climbing, driving, and environmental limitations are sufficient to address her epilepsy.

(*Id.*). The ALJ ultimately adopted Dr. Koch's opined limitations in Plaintiff's RFC. (R. at 27).

The Undersigned concludes that the ALJ did her duty to evaluate the state agency medical consultant's opinion for supportability. Specifically, the ALJ evaluated supportability when the ALJ discussed the opined exertional capacity and limitations against the record Dr. Koch had at the time of her review. In explaining her opined limitations, Dr. Koch cited to Plaintiff's degenerative disc disease, severe pain, and spine surgeries. (R. at 100; *see also* R. at 88–90, 97–99 (the state agency consultants' summary of the pertinent records)). Elsewhere, she also noted some records showed degenerative changes in Plaintiff's lumbar spine, antalgic gait, decreased

range of motion, and normal motor strength.  (R. at 100; *see also* R. at 97–99).  The ALJ likewise referenced Plaintiff's pain, spine, and intermittent gait abnormalities in considering Dr. Koch's opinion.  (R. at 30).

In other parts of her decision, the ALJ went into more detail about the records Dr. Koch considered.  For example, the ALJ and Dr. Koch considered that in April 2022, a lumbar MRI showed postoperative changes of the anterior interbody fusion, along with mild multilevel arthrosis.  (R. at 28, 89 (both citing R. at 544–45)).  In May 2022, she was seen at the emergency department for pain in her right lumbar region.  (R. at 28, 89 (both citing R. at 434)).  The ALJ further considered records reviewed by the consultants that noted in August 2022, Plaintiff presented at the emergency room for hip pain, but she had good range of motion, no tenderness, and normal reflexes.  (R. at 28, 89 (both citing R. at 617, 619)).  At the same appointment, an x-ray showed no discrete fracture or acute deformity in her hip or bony defect in her pelvis.  (*Id.*).  The ALJ and Dr. Koch also attended to evidence denoting Plaintiff's hip and leg pain at an emergency room visit in September 2022.  (R. at 28, 88 (both citing R. at 609)).  They considered that in October 2022, Plaintiff's back was symmetric and had no curvature, she had normal range of motion, and no tenderness.  (R. at 28, 88 (both citing 605–06)).  Then in January 2023, Plaintiff presented normal range of motion in her extremities and cervical spine with no focal deficit.  (R. at 28, 88 (both citing R. at 1559–60)).  The ALJ further highlighted a record considered by Dr. Koch that in May 2023, Plaintiff was examined as having moderate antalgic gait and tenderness in her lumbar spine.  (R. at 28, 97 (both citing R. at 1674–76)).  The ALJ then noted that in July 2023, Plaintiff presented at a pain evaluation with more pain and tenderness in her lumbar spine.  (R. at 28, 97 (both citing R. at 1670–72)).

This discussion shows that while the ALJ did not go into detail about the evidence the state agency reviewers relied on when evaluating their opinions, she did elsewhere in the opinion. *See Stacie B.*, 2023 WL 8251252, at *5. And an ALJ's opinion must be read as a whole. *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014). A holistic read shows that the ALJ evaluated the record evidence the consultants relied on and she then found the opinions were supported based on that evidence and in line with Dr. Koch's stated justification. (R. at 30). The ALJ was not under a duty to do more.

Ultimately, it is up to the ALJ to determine the weight that each opinion is due. *See Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir. 2013). And the ALJ's role is to articulate how she considered medical opinions and how persuasive she found the medical opinions to be. *Holston v. Saul*, No. 1:20−CV−1001, 2021 WL 1877173, at *11 (N.D. Ohio Apr. 20, 2021), *report and recommendation adopted*, No. 1:20 CV 1001, 2021 WL 1863256 (N.D. Ohio May 10, 2021). The role of the Court is not to reweigh the evidence, but to make sure the ALJ considered the proper factors and supported her conclusion with substantial evidence. *Id.* at *14. Here, the ALJ met the minimum articulation requirement, and the Undersigned can trace her reasoning. Consequently, the ALJ properly evaluated the supportability of the consultants' opinions, and this error is without merit.

**C.      The ALJ's Evaluation of Plaintiff's Past Relevant Work**

Plaintiff's final assigned error concerns the ALJ's finding that Plaintiff is capable of performing her past relevant work as a babysitter because she did that job within 15 years of the date of the ALJ's decision. (R. at 30). Plaintiff argues that under 20 C.F.R. § 416.960(b)(1)(i), the SSA defines "past relevant work" as "work that you have done within the past five years[.]"

11

(Doc. 8 at 15–16).  So, says Plaintiff, the ALJ erred by considering her work done within the past 15 years.

While Plaintiff is correct that "the past five years" is the applicable benchmark now, it was not at the time the ALJ issued her decision on Plaintiff's application.  The ALJ issued her decision on April 24, 2024.  (R. at 18–37).  At the time, the regulations provided that "[p]ast relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it."  20 C.F.R. § 416.960(b)(1) (effective Aug. 24, 2012 to June 21, 2024).  Effective on June 22, 2024, the SSA changed its definition of past relevant work to encompass work done within the past five years.  *See* Final Rule, Intermediate Improvement to the Disability Adjudication Process, Including How We Consider Past Work, 89 Fed. Reg. 27,653 (Apr. 18, 2024) ("We are revising the definition of past relevant work (PRW) by reducing the relevant work period from 15 to 5 years."); SSR 24-2p, 89 Fed. Reg. 48, 479 (June 6, 2024), 2024 WL 2846571 (hereinafter "SSR 24-2p"); 20 C.F.R. § 416.960(b)(1)(i) (effective June 22, 2024).

Because the ALJ's opinion came before June 22, 2024, the new 5-year language does not apply to Plaintiff's claim.  The SSA makes this clear.  SSR 24-2p, at n.1 ("We will use this SSR on and after its applicable date in any case in which we make a determination or decision.  We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").  Courts across the country—including this one—have declined to apply the new language to decisions issued prior to June 22, 2024.  *See, e.g.*, *Brian B. v. Comm'r of Soc. Sec.*, No. 3:25-CV-187, 2026 WL 706584, at *9 n.1 (S.D. Ohio Mar. 13, 2026); *Obrien v. Bisignano*, 142 F.4th 687, 701 n.8 (9th Cir. 2025); *Minnis v. Comm'r of Soc. Sec.*, No. 24-11281, 2025 WL 974570, at *3 (11th Cir. Apr. 1, 2025); *Tina W. v. Comm'r, SSA*, No. 24-4029, 2024 WL

12

5165687, at *3 (10th Cir. Dec. 19, 2024); *Valerie W. v. Comm'r of Soc. Sec.*, No. 25-10323, 2026 WL 776359, at *4 n.2 (E.D. Mich. Mar. 17, 2026), *report and recommendation adopted*, No. 25-CV-10323, 2026 WL 786379 (E.D. Mich. Mar. 19, 2026).

For these reasons, the ALJ did not err in considering Plaintiff's past relevant work within the 15 years before she issued her opinion.  Remand is not required.

## IV.    CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's decision.

Date: June 18, 2026                              *s/* Kimberly A. Jolson
                                                 KIMBERLY A. JOLSON
                                                 UNITED STATES MAGISTRATE JUDGE

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s).  A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a forfeiture of the right to have the district judge review the Report and Recommendation de novo and in a forfeiture of the right to appeal the decision of the District

13

Court adopting the Report and Recommendation.  *Berkshire v. Dahl*, 928 F.3d 520, 530–31 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981)